Oseen, J.
delivered the opinion of the court.
The question in this case, is, whether corn produced by the labor of slaves, the separate property of the wife, belongs to the husband, and is liable to execution for Ms debts?
It appears, from the bill of exceptions, that the husband William R. Wair, in consideration that his wife’s father had paid off his debts — conveyed to Wm. C. Young, certain slaves mentioned in the deed, in trust as follows: “That said William C. Young shall suffer and permit the said Camelia Wair, to use, hire and enjoy said negroes and their increase entirely free and clear of any control or interference of any one, and free and clear of all liability and responsibility for my debts hereafter to be contracted, and for the sole and separate use and maintenance of my said wife Camelia and her and my children, and that the said Camelia shall be permitted to receive the rents, issues and profits arising from the said negroes, without however giving her any right to sell the same.”
*552 The corn in controversy was produced on a farm upon which Wair and his wife Camelia lived in the year 1846, and raised by the labor of the negroes conveyed in the deed, and by horses belonging to Mrs. Wair and her father.
The farm was rented from John Rains under the following circumstances : — Mrs. Wair requested her husband and another person to go and look at the farm and- see if it would suit, and she told Mr. Wair if the place suited and the rent could be agreed on, to make the note payable either in money or corn at the neighborhood price. The place was rented — Mr. Wair executing his own note to Rains for $120, payable in corn at the neighborhood price. Mr. Wair is a saddler and rarely did any work on the farm. The farm was conducted principally under the direction of a negro man, Mrs. Wair’s father permitted to work for her. The rent was paid in corn raised on the farm, and the balance of the corn raised was levied on by the defendant as the property of William R. Wair.
The court charged the jury that “Mrs. Wair had a right to use the slaves in agriculture, and that if she did so, a reasonable portion of the crop raised by their labor, when separated from the freehold, would vest in the trustee for the use of the cestui que trust.”
The jury found a verdict for the plaintiff and the defendant appealed in error to this court. It is now contended for the plaintiff in error that the proceeds of the labor of the slaves vested in the husband — and the case of Carne vs. Price, 7 Mees. and Wel. Exch. Rep. 1843, is relied on to support this position.
In that case money was settled to the separate use of the wife before marriage, and the trustee of the settle *553 ment paid to her a sum -with which she purchased -wearing apparel. The apparel thus purchased was seized in execution for the husband’s debts. Upon an issue to try whether the apparel was the property of the trustee or not, the jury, under the direction of the court, found a verdict against the trustee. A rule was obtained for a new trial, which was discharged — the judges being of opinion that when the money was placed in the hands of the wife by the trustee, it became her own money, and vested in the husband — and that the apparel purchased with said money, belonged to the husband and not to the trustee.
Baron 'Parke doubted whether the wife might not have-been agent for the trustee, for the purpose of buying the clothes; but the court said ' the evidence did not show such agency. It may be remarked in relation to this case that it goes to the very verge of the law — and we do not feel prepared to yield to its authority. If it be law, it seems to us, there is much reason for the remark of the counsel in support of the rule. “ If it be so,” said he, “ it is utterly useless in any case to make provision for the separate use of the wife; because not only would the husband be entitled to the money when delivered into her hand, but he might even take the food, purchased with it, from her table.”
But it is not necessary that we should question the-authority of this case. The court concede, that’ if there-, had been evidence that the wife acted as agent of the-trustee in the purchase of the clothes, the legal title to-them would have vested in him, for her use. In the case at bar, the deed of trust stipulates that the trustee shall “permit the said Camelia to use, hire and enjoy the said negroes,” and “to receive the rents, issues and *554 profits of them.” While the legal title is in the trastee, the. entire, uncontrolled management of the estate, for the support of herself and her children, is devolved upon the wife, and the money and property obtained by the labor of the slaves, vests in the trustee for the uses and trusts stipulated in the deed.
In the case of Jarman vs. Woollaston, 3 Term. Rep. 329, a woman, before marriage, assigned all her stock in trade and other effects, to a trustee, in trust for her separate use and disposal, and to the intent that she might carry on trade at her own risk.
The marriage took place and the husband becoming bankrupt, this suit was brought by the trustee of the wife against the assignees in bankruptcy. The jury found a verdict for the plaintiff for the furniture of the house. The court refused a new trial, Buller, judge, observing “that the trustee was legal owner, and the wife’s possession in the manner proved at the trial is no evidence of fraud; for she was the agent of the trustee.” Here the agency of the wife was a conclusion of law from the relative situation and rights of the parties in relation to this property. How much more ground is there in the case before us for holding that the wife is the agent of the trustee.
In the case of Dean vs. Brown, 2 Carr, and Payne 62, 12 Eng. Com. L. Rep. 32, all the stock in trade, materials and other articles belonging to a single woman about to be married, were before the marriage conveyed to a trustee for her sole and separate use.
She had a horse and chaise before the marriage and subsequent to the marriage the chaise was sold and the chaise in question was bought in its stead. The horse and chaise were taken under an execution against the *555 husband. The trustee brought an action of trover against the sheriff and his officer. The defendants relied upon the circumstance of horse and chaise not being • included by name in the schedule to the settlement, and on the fact of Hall having used the chaise when Ms wife was not with him, and of his having had the horse to draw a cart employed by him in his business-as a corn chandler. Abbott, judge, held that the property in the horse and chaise was vested in the plaintiff by the settlement, although not mentioned in the deed nor in the schedule. But as the deed conveyed all articles belonging to her necessary in and about her business, the horse and chaise might be necessary about her business, which was that of an artificial florist, and would by those words of the deed be vested in the trustee, the jury found a verdict for the plaintiff.
It is clear from these cases that the residence of the husband with the wife, and his occasional possession and use of the separate property, will not entitle creditors to treat it as belonging to him; nor does the sale of one article and the purchase of another, entitle the husband to the article thus acquired. So, if property is produced by the labor of the slaves and horses belonging to the separate estate under the direction of the wife, such property vests in the trustee, because the wife in such case is his agent.
In this case, Mrs. Wair exercised control over the slaves — the husband rarely going to the field. The farm was rented at her instance, by her direction, and for her benefit, and the rent was paid in corn produced by the labor of her slaves. The fact that Wair executed a note to Rains for the rent in his own name can make no difference. The proof is clear that he was requested by *556 his wife to examine the farm and he was told by her what kind of contract he should make. But if the land had belonged to Wair, and he had permitted his wife to work her slaves on it and raise a crop, the crop so raised would be hers, and he would only be entitled to compensation for the use and occupation of it.
We think, therefore, that there is no error in this record against the plaintiff in error. ' But his Honor erred in saying that the plaintiff would be feiititled to a reasonable share of the crop. He was entitled to the entire crop after the landlord’s claim for rent was satisfied.
Affirm the judgment.